## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Mark W. Dobronski,

                  Plaintiff,          Case No. 25-10168

v.                             Judith E. Levy
                               United States District Judge
Joseph Earl Uppleger III and
Advisorworld.com, Inc.,         Mag. Judge Elizabeth A.
                               Stafford
                  Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANT
## ADVISORWORLD.COM, INC.'S MOTION TO DISMISS [21]

Plaintiff Mark W. Dobronski brings this pro se consumer protection suit against Advisorworld.com, Inc. ("Advisorworld") and Joseph Earl Uppleger III, alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), Mich. Comp. Laws § 484.101 *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), Mich. Comp. Laws § 445.101 *et seq.* (*See generally* ECF No. 20.)

Before the Court is a motion to dismiss filed by Defendant Advisorworld in response to Plaintiff's First Amended Complaint. (ECF

No. 21.) The motion is fully briefed. (ECF Nos. 23, 25.) For the reasons set forth below, Advisorworld's motion to dismiss is denied.

## I.   Background

### A.   Factual Background

Plaintiff alleges that Advisorworld "is in the business of . . . selling consumer leads to investment advisors across the United States." (ECF No. 20, PageID.224, ¶ 60.) As part of its business, Advisorworld allegedly "utilizes telemarketing to pre-qualify consumer prospects and then provides those vetted prospects to local investment advisors so that the investment advisors may solicit the consumer to utilize the advisors' services." (*Id.* at PageID.225, ¶ 61.) Plaintiff alleges that Mr. Uppleger is an investment advisor who utilizes Advisorworld's services. (*Id.* at PageID.226, ¶¶ 60, 71.)

On January 9, 2025, Plaintiff received four calls from "810-433-0268." (*Id.* at PageID.226–227, ¶¶ 72–73.) Each of the four calls included a pre-recorded message identifying the caller as "Ashley" from "Advisor World." (*Id.* at PageID.227, ¶ 74.) During the fourth call, Plaintiff interacted with the "interactive voice response prompts" and "feign[ed] interest," which eventually led to a call informing Plaintiff that "a local

2

advisor, Joe Uppleger, would follow up with a proposal within 24 to 48 hours." (*Id.* at PageID.228, ¶ 78.)

Mr. Uppleger initiated two calls to Plaintiff on January 9, 2025, which Plaintiff was not able to answer. (*Id.* at PageID.228–229, ¶¶ 80, 83.) Plaintiff called Mr. Uppleger back and informed him that Plaintiff did not wish to receive telemarketing calls. (*Id.* at PageID.229–230, ¶¶ 86, 90.) Plaintiff also alleges that he called the "810-433-0268" number four times and made a "do-not-call demand."  (*Id.* at PageID.227, ¶ 79.)

### B.    Advisorworld's Extrinsic Evidence

Advisorworld's motion to dismiss relies on extrinsic evidence to argue, among other things, that Plaintiff's claims are barred by his own conduct. Advisorworld argues that Plaintiff solicited calls from Advisorworld by inputting information into a web inquiry form on the AnnuityRatesHQ.com website[1] on or about January 8, 2025. (*See* ECF No. 21, PageID.268–270.) To support these arguments, Advisorworld submits a declaration by its Chief Executive Officer, Galen Weston, which includes several attachments. (*See* ECF No. 21-1.)

---

[1]    Advisorworld asserts that it is the owner and operator of AnnuityRatesHQ.com. (ECF No. 21-1, PageID.275, ¶ 4.)

Mr. Weston's declaration explains that Advisorworld uses a "web inquiry form" where people can "request information from Advisorworld." (ECF No. 21-1, PageID.276, ¶ 6.) He describes evidence that leads Advisorworld to conclude that, on or about January 8, 2025, someone accessed the form and submitted multiple inquiries under different names from the same IP address. (*See generally id.* at PageID.278–280, ¶¶ 15–29.) Mr. Weston states that Advisorworld believes that Plaintiff submitted each of these inquiries. (*See id.* at PageID.279, ¶ 15; *id.* at PageID.280, ¶ 30.)

Mr. Weston also provides information regarding Advisorworld's web inquiry form. His declaration contains a screenshot of what he describes as the "final step" of the form that was "in use as of January 8, 2025":

(*Id.* at PageID.276, ¶ 8.) This portion of the form included fields for a user to provide "contact information," which is apparently required "[t]o send the generated report." (*Id.*) The following statement appeared under the field for typing in a telephone number: "I acknowledge that a verification call will be made to confirm the provided details." (*Id.*)

Mr. Weston acknowledges that, "at that time [that Plaintiff allegedly visited the website, i.e., January 8, 2025], we did not rely on a separate Privacy Policy checkbox to indicate consent to be contacted." (*Id.* at PageID.277, ¶ 9.) According to Mr. Weston, the "web inquiry form has [since] been updated along with [Advisorworld's] privacy policy . . . ." (*Id.* at PageID.277, ¶ 10.) Due to that change, current "users of our websites

5

are notified that by checking the box and continuing, they consent to our Privacy Policy, which appears on a single, scrollable web page and also contains a conspicuous link to our Terms and Conditions." (*Id.* at PageID.277, ¶ 11.) [2]

Mr. Weston's declaration does not include copies of or screenshots from any version of Advisorworld's Privacy Policy or Terms and Conditions. In its brief, Advisorworld asserts that "[p]rominently featured at the bottom of every page [on the AnnuityRatesHQ website] is a link to the Privacy Policy and Terms and Conditions." (ECF No. 21, PageID.255.) Advisorworld's brief includes what may be a screenshot of a portion of a website. (*Id.* at PageID.256.) The screenshot appears to depict links to a "Privacy Policy" and "Terms and Conditions," among other things. No information is provided by Advisorworld about when this screenshot was taken or whether it reflects the state of the AnnuityRatesHQ website as of January 8, 2025.

---

[2] In support of its reply brief, Advisorworld submits an additional declaration by Mr. Weston, which also includes several attachments. (ECF No. 25-2.) In his second declaration, Mr. Weston states that he believes Plaintiff submitted additional inquiries on the AnnuityRatesHQ website, and that Advisorworld has initiated a lawsuit against Plaintiff in Ontario, Canada. (*Id.* at PageID.416–417, ¶¶ 3–7.)

Advisorworld's brief also provides what may be another screenshot that includes the heading "AdvisorWorld.com Inc. Website(s) Terms of Use" along with the following text:

> You should read these terms and conditions carefully before using the Site. By accessing or using this Site or otherwise indicating your consent, you agree to be bound by these terms and conditions and the documents referred to in them. If you do not agree with or accept any of these terms, you should cease using the Site immediately.

(*Id.*) Advisorworld's memorandum in support of its motion provides a link to a website, "http://advisorworld.com/advisor-terms-of-use/," after setting forth this image. (*Id.* at PageID.256.) The memorandum further provides an image (which appears to be a screenshot) that states: "These terms and conditions shall be construed in accordance with and governed by the laws in effect within Ontario, and the parties attorn to the exclusive jurisdiction of the Courts of Ontario." (*Id.* at PageID.257.)

### C.    Procedural Background

Plaintiff filed his initial Complaint on January 17, 2025. (ECF No. 1.) Advisorworld moved to dismiss Plaintiff's initial Complaint on August

7, 2025.[3] (ECF No. 19.) In lieu of responding to the motion to dismiss, Plaintiff filed a First Amended Complaint on August 11, 2025. (ECF No. 20.) Advisorworld moved to dismiss the First Amended Complaint on August 25, 2025. (ECF No. 21.) The motion is fully briefed. (*See* ECF Nos. 23, 25, 26, 27-1.)[4]

## II.    Forum-Selection Clause

Advisorworld initially seeks dismissal under the common-law doctrine of forum non conveniens. It argues that the matter should be dismissed under this doctrine because Plaintiff agreed that any disputes between the parties would be litigated in Ontario, Canada. (ECF No. 21, PageID.262–263.) This argument fails.

---

[3] Plaintiff did not serve Advisorworld with the initial Complaint until June 2025 due his difficulty in locating an address at which Advisorworld could be served. (*See* ECF Nos. 10, 11, 12, 13, 14, 15.) On June 24, 2025, the Court granted Plaintiff's ex parte motion for alternative service and permitted Plaintiff to use an alternative form of service. (ECF No. 15.) Advisorworld does not challenge the manner in which it was served.

[4] On December 1, 2025, Plaintiff filed a notice of supplemental authority that alerted the Court to a decision by a federal court in California that addressed the enforceability of an online notice. (ECF No. 26, PageID.427 (submitting *Ferrell v. Snapcommerce Holdings, Inc.*, No. 25-cv-03160, 2025 WL 3280992 (N.D. Cal. Nov. 25, 2025)).). Advisorworld sought and obtained leave to file a response (ECF No. 27-1) to Plaintiff's notice of supplemental authority. (*See* ECF Nos. 27, 29.)

## A.    Legal Standard

"The parties to a contract may agree to litigate any or all potential future disputes in a particular forum via a 'forum-selection clause.'" *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 309 (6th Cir. 2024) (citations omitted). When a forum-selection clause designates a court "within the federal court system," a party seeking to enforce the clause may file a motion to transfer venue to the parties' chosen forum under 28 U.S.C. § 1404. *Id.* at 310 (quoting *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019)). Where, however, a forum-selection clause indicates that a matter should be heard by a body other than a federal court, "*forum non conveniens* is the appropriate method of enforcement." *Id.* (quoting *Boling*, 771 F. App'x at 567); *see also VCST Int'l B.V. v. BorgWarner Noblesville, LLC*, 142 F.4th 393, 400 (6th Cir. 2025) ("The [forum non conveniens] doctrine gives district courts discretion to dismiss a suit if a more convenient venue exists." (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007))).[5]

---

[5] Courts have also analyzed whether to enforce forum-selection clauses under the rubric of whether the plaintiff has stated a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g.*, *VCST*,

"Because the presence of a valid and enforceable forum-selection clause alters the type of forum-non-conveniens analysis a court must apply, . . . a court must first . . . determine whether a forum-selection clause is applicable to the claims at issue, mandatory, valid, and enforceable." *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 215 (6th Cir. 2021) (citing *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874–76 (D.C. Cir. 2019)). If the foregoing inquiry demonstrates that the parties agreed to litigate a dispute elsewhere, the case should be dismissed *unless* the plaintiff shows that certain public-interest factors "weigh heavily against dismissal." *See id.* at 216. The public-interest factors applicable to this analysis include (1) "administrative difficulties flowing from court congestion"; (2) "the local interest in having localized controversies decided at home"; (3) "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern

142 F.4th at 399. Under this framework, the defendant's invocation of a forum-selection clause is treated as an affirmative defense. *See id.* Because Advisorworld relies solely on the doctrine of forum non conveniens to seek dismissal based on a purported forum-selection clause (*see* ECF No. 21, PageID.259–260; *id.* at PageID.262–266), the Court will not address whether dismissal based on this purported clause would be warranted under Rule 12(b)(6). However, some decisions that analyze forum-selection-clauses under Rule 12(b)(6) are still relevant to the issues analyzed in this Opinion and Order.

the action"; (4) "the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law"; and (5) "the unfairness of burdening citizens in an unrelated forum with jury duty." *Hefferan v. Ethicon Endo-Surgery*, 828 F.3d 488, 500 (6th Cir. 2016) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "The onus falls on the plaintiff to show that the public-interest factors defeat dismissal, and they rarely will." *Lakeside Surfaces*, 16 F.4th at 215 (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 64 (2013)).

In cases where no forum-selection clause governs the parties' choice of forum, the forum-non-conveniens analysis has three "components": "(1) the court 'determines the degree of deference owed [to] the plaintiff's forum choice,' and then asks if the defendant has met its burden of (2) showing an 'adequate alternative forum,'[6] and (3) showing that 'the plaintiff's chosen forum is unnecessarily burdensome based on' a

---

[6] An alternative forum is "adequate" if (1) the defendant is "amenable to process" in the jurisdiction in which that forum is located and (2) the jurisdiction in which the forum is located "may remedy the alleged harm." *Hefferan*, 828 F.3d at 494 (citing *Piper Aircraft*, 454 U.S. at 254–55).

11

balancing of public-interest and private-interest factors."[7] *Lakeside Surfaces*, 16 F.4th at 214–15 (quoting *Boling*, 771 F. App'x at 567).

Finally, the Sixth Circuit has acknowledged that the "procedural rules for deciding motions under the forum non conveniens doctrine are far less clear than those governing motions under Rule 12(b)(6)." *VCST*, 142 F.4th at 400. "Other circuit courts have suggested that district courts need not stick to the four corners of the complaint and can consider other evidence that the parties submit with the motion." *Id.* (collecting decisions by the Second, Ninth, Tenth, and Eleventh Circuits). "But these courts have also suggested that they will accept the complaint's allegations as true if the allegations do not conflict with any evidence or if the district court resolves the motion without an evidentiary hearing." *Id.* (collecting cases).

---

[7] The private-interest factors include (1) "the relative ease of access to sources of proof"; (2) the "availability of compulsory process for attendance of unwilling" witnesses; (3) "the cost of obtaining attendance of willing[] witnesses"; (4) the "possibility of view[ing] . . . the premises [at the center of the case], if view[ing the premises] would be appropriate to the action," and (5) "all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Heffernan*, 828 F.3d at 498 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

## B.    Analysis

Advisorworld argues that Plaintiff entered into an applicable, mandatory, valid, and enforceable forum-selection clause by "visit[ing], interact[ing] with, and request[ing] information from AnnuityRatesHQ.com, a website owned and operated by Advisorworld.com." (ECF No. 21, PageID.262.) Advisorworld asserts that, as part of visiting this website, Plaintiff "viewed, and therefore assented to, Advisorworld.com's Privacy Policy and Terms and Conditions." (*Id.* at PageID.262–263.) According to Advisorworld, "those terms vest exclusive jurisdiction over disputes between the parties in the courts of the province of Ontario, Canada." (*Id.* at PageID.263.)

These arguments are all based on materials that are extrinsic to the First Amended Complaint and that Advisorworld provided (in some fashion) as part of its motion to dismiss. As set forth above, there is legal support for considering matters outside the four corners of a complaint when deciding a motion to dismiss based on a purported forum-selection clause under the doctrine of forum non conveniens. *See VCST*, 142 F.4th at 400 (citing the practice in other Circuits). Here, however, the materials Advisorworld relies upon are unauthenticated and incomplete.

13

Advisorworld relies on provisions that are (or were) purportedly set forth in two webpages: a page containing a Privacy Policy and a page containing Terms and Conditions. In lieu of providing complete copies of these pages, Advisorworld provides screenshots of specific provisions that it claims appeared in those larger documents. (*See* ECF No. 21, PageID.255–257.) The screenshots are provided in the body of Advisorworld's brief rather than as part of a declaration by someone who could testify to their authenticity. *See Foreword Mag., Inc. v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) (explaining what is necessary to authenticate the contents of commercial websites under Rule 901 of the Federal Rules of Evidence). Further, the screenshots themselves do not reveal when (if ever) these particular provisions were posted to the AnnuityRatesHQ website. This omission deprives the Court of sufficient grounds to conclude that these terms appeared on the website as of a specific date in January 2025. In short, Advisorworld's failure to submit authenticated, complete copies of the documents it believes set forth its agreement with Plaintiff dooms its motion to dismiss based on this purported contract. *See Moyer v. Gov't Emps. Ins. Co.*, 114 F.4th 563, 568–71 & n.9 (6th Cir. 2024) (reversing

14

grant of motion to dismiss where the district court made its decision based on documentation of a benefits plan that had "both authenticity and completeness issues").

Putting aside these threshold evidentiary issues, Advisorworld's arguments regarding the applicability of the purported forum-selection clause also fail on the merits. As noted above, a party that moves to dismiss based on a forum-selection clause must establish that the parties agreed to litigate their dispute elsewhere. *See Lakeside Surfaces*, 16 F.4th at 215. Advisorworld fails to demonstrate that, in this case, Plaintiff agreed to litigate this dispute in Ontario, Canada.

Advisorworld identifies three decisions by courts in the Second Circuit that apply different laws (including California and New York law)[8] to the question of when a plaintiff can be deemed to have agreed to

---

[8] Advisorworld does not undertake a choice-of-law analysis or clearly identify the law that it believes should govern the Court's determination of whether Plaintiff agreed to litigate this dispute in Ontario, Canada. The Court will not undertake its own choice-of-law analysis at this time. Advisorworld bears the burden of explaining why dismissal is appropriate and, as set out herein, it has not identified any on-point authority from any jurisdiction that supports dismissal. *Cf. Nashville Underground, LLC v. AMCO Ins. Co.*, 523 F. Supp. 3d 1006, 1010 (M.D. Tenn. 2021) (explaining that a party that moves to dismiss under Rule 12(b)(6) "bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim").

15

be bound by a forum-selection clause that is set forth on a website: (1) *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012) (*see* ECF No. 21, PageID.264; ECF No. 25, PageID.408); (2) *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) (*see* ECF No. 21, PageID.263; ECF No. 25, PageID.407); and (3) *Hu v. Whaleco, Inc.*, 779 F. Supp. 3d 265 (E.D.N.Y. 2024) (*see* ECF No. 21, PageID.263). None of these decisions help Advisorworld. In each of these cases, the court relied on the fact that a website warned users that, by proceeding to set up accounts, they were signaling their agreement to be bound by specific terms and conditions. *See Fteja*, 841 F. Supp. 2d at 838–40 (holding that users signing up for Facebook accounts agreed to be bound by a forum-selection clause where Facebook's website "warn[ed] its users that they will accept terms if they click a button while providing the opportunity to view the terms by first clicking on a hyperlink"); *Meyer*, 868 F.3d at 79–80 (concluding as a matter of California law that users creating Uber accounts agreed to be bound by an arbitration clause set forth in Uber's Terms of Service because those creating an account were required to click a "Register" button that was located immediately above text that stated "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY

16

POLICY" and that included hyperlinks to both the terms and the policy); *Hu*, 779 F. Supp. 3d at 284–96 (holding as a matter of New York law that users creating Temu accounts agreed to arbitrate disputes because the application's registration page required users to click a button labeled "Continue" while text at the bottom of the same screen advised that, "[b]y continuing, you agree to our Terms of Use and Privacy & Cookie Policy").

The circumstances here are materially different than those in *Fjeta*, *Meyer*, and *Hu*. Here, Plaintiff was not advised that, by entering information into a form on the AnnuityRatesHQ website, he was agreeing to be bound by specific Terms and Conditions, including a clause specifying that disputes would be resolved in Ontario, Canada. The form he allegedly completed asked him to provide contact information and stated that he would be receiving a "verification call . . . to confirm" the information he had provided. (ECF No. 21-1, PageID.276, ¶ 8.) Nothing in this language notified Plaintiff that he would be bound by terms that were allegedly provided elsewhere on the website.

As a final attempt to secure dismissal based on the doctrine of forum non conveniens, Advisorworld argues that Plaintiff had "constructive" notice of the forum-selection clause because, at least

17

according to Advisorworld, Plaintiff "view[ed] Advisorworld's Terms and Conditions before filing this lawsuit." (ECF No. 25, PageID.406.) This argument lacks both factual and legal support. As to the facts, Advisorworld's (largely unauthenticated) extrinsic evidence fails to demonstrate that Plaintiff accessed the website's purported Terms and Conditions before filing this lawsuit.[9] And even if the factual underpinnings of this argument were borne out by Advisorworld's own evidence, Advisorworld does not cite any authority or otherwise explain

---

[9] Advisorworld asserts in its brief that "Advisorworld's records show [that Plaintiff] navigate[d] to the Terms and Conditions page on January 10, 2025." (*Id.* at PageID.408 (citing ECF No. 21-1, PageID.279, ¶ 28).) The sole support it offers for this statement is a paragraph of Mr. Weston's first declaration that states: "Based upon our IP address logging program, we were able to determine that the IP address used to create the inquiries for both 'George Curious' and 'Stanley Norris' [two aliases purportedly used by Plaintiff] visited the webpages containing our Privacy Policy and Terms and Conditions before the filing of this lawsuit. **Ex. 1.**" (ECF No. 21-1, PageID.279, ¶ 28 (emphasis in original).) Exhibit 1 to Mr. Weston's first declaration is an unauthenticated thirteen-page document comprised of a table that appears to identify URLs that were visited by a user with a single IP address on particular dates at particular times. (*Id.* at PageID.284–297.) The table, notably, does not include *any* entries for January 10, 2025 (*see id.* at PageID.289), thus belying Advisorworld's claim that its records show that Plaintiff navigated to a particular webpage on that date. (*See* ECF No. 25, PageID.408.) Further, on the Court's reading, the IP address identified by the table appears to have first accessed the website's Terms and Conditions on January 27, 2025 at 10:30 AM EST (ECF No. 21-1, PageID.291), which was ten days after Plaintiff filed his initial Complaint in this action. (ECF No. 1.) Thus, even putting aside the fact that the IP log has not been properly authenticated, it does not establish that Plaintiff accessed Advisorworld's Terms and Conditions prior to filing this lawsuit.

18

how merely accessing a webpage serves as sufficient evidence that a user agrees to be bound by its contents. This argument has no merit.

In sum, Advisorworld fails to demonstrate a basis for dismissing this action under the common-law forum non conveniens doctrine. Advisorworld's motion to dismiss on this basis is denied.

## III.   Standing (Rule 12(b)(1))

Advisorworld next challenges Plaintiff's Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1).

"Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Subject-matter jurisdiction requires a demonstration that the plaintiff has constitutional standing to bring suit. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007). If a plaintiff cannot demonstrate constitutional standing, the case must be dismissed. *Id.* at 607 (citing *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck–Medco Managed Care*, 433 F.3d 181, 198 (2d Cir. 2005)).

19

In order to demonstrate standing pursuant to Article III of the Constitution, Plaintiff must demonstrate: (1) that each plaintiff has suffered "an invasion of a legally protected interest, which is concrete and particularized . . . and . . . actual or imminent"; (2) that the injury is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) that a favorable decision must be likely to redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations omitted) (alteration in original).

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). Here, Advisorworld appears to bring a factual challenge to subject-matter jurisdiction. Advisorworld states that "Dobronski, under an alias, submitted an inquiry to Advisorworld.com and consented to receive phone calls within the meaning of the TCPA and related state statutes . . . . As such, he impermissibly manufactured the harm he now alleges." (ECF No. 21, PageID.267.) In support of this factual contention, Advisorworld refers to the declaration of Galen Weston, the Chief Executive Officer of Advisorworld, who claims that the

calls were initiated due to inquiries from IP addresses that are linked to Plaintiff. (*See* ECF No. 21-1, PageID.278–279.)

With regard to Advisorworld's Rule 12(b)(1) challenge, the Court declines to consider Advisorworld's factual assertions at this stage of the case. "[A] district court engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Gentek Bldg. Prods.*, 491 F.3d at 330. "If, on the other hand, an attack on subject-matter jurisdiction also implicates an element of the cause of action, then the district court should '*find that jurisdiction exists* and deal with the objection as a direct attack on the merits of the plaintiff's claim.'" *Id.* (quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997)).

Here, Advisorworld asks the Court to prematurely consider the merits of Plaintiff's claims. Advisorworld argues that Plaintiff's actions, as described in the declaration and not in Plaintiff's First Amended Complaint, constituted consent "within the meaning of the TCPA and related state statutes," and, as such, Plaintiff suffered no injury. (ECF No. 21, PageID.267.) But the "Article III requirement of remediable

injury in fact . . . has nothing to do with the text of the statute relied upon." *De Angelis v. Nat'l Entmt. Grp., LLC*, No. 2:17-CV-924, 2018 WL 11316612, at *5 (S.D. Ohio July 25, 2018) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998)), Advisorworld asks the Court to consider factual assertions that were not pled in Plaintiff's amended complaint and determine if they demonstrate consent to be contacted within the meaning of the TCPA and other applicable law. The Court does not believe it is appropriate to undertake what is functionally a merits inquiry to resolve a threshold challenge to Plaintiff's standing.

Furthermore, to the extent Advisorworld claims that Plaintiff lacks constitutional standing because his "only purpose" in using his phones was "to file TCPA lawsuits" (ECF No. 21, PageID.267–268 (quoting *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 800, 803 (W.D. Pa. 2016)), the Court disagrees. Plaintiff alleges that the subject phone calls were directed at his residential telephone number, and that he "uses his residential telephone number . . . primarily for personal, family, and household communications, and not for business purposes." (ECF No. 20, PageID.218, ¶ 32.) Plaintiff further alleges that his residential telephone

22

number is on the National Do Not Call Registry. (*Id.* at PageID.218, ¶ 33.)

Given these allegations, "there is no indication that [Plaintiff] opened a telephone account for the purpose of receiving telephone solicitations," and "courts have not extended the *Stoops* holding where the subject phone number was not procured for the purpose of facilitating TCPA litigation." *Dobronski v. Real Innovation Inc.*, No. 23-11301, 2024 WL 6976250, at *4 (E.D. Mich. Mar. 18, 2024) (collecting cases). As such, the Court declines to apply *Stoops*' reasoning here.

In sum, Advisorworld has not presented a viable challenge to Plaintiff's standing to assert claims at this juncture. Advisorworld's motion to dismiss for lack of subject matter jurisdiction is therefore denied.

## IV.   Sufficiency of Plaintiff's Claims (Rule 12(b)(6))

Advisorworld also moves for dismissal of Plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

23

## A.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a facially plausible claim requires courts to construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and decide whether there is enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mich. First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 425 (6th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 466 (6th Cir. 2014) (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88–89 (6th Cir. 1997)). However, "if a plaintiff references or

24

quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Id.* (citing *Weiner*, 108 F.3d at 89).[10]

A pro se complaint is entitled to a liberal construction and "must be held to less stringent standards than formal pleadings drafted by

---

[10] Advisorworld's brief appears to misrepresent the standard under which extrinsic evidence can be considered on a Rule 12(b)(6) motion by altering the substance of a case quotation. Advisorworld cites *Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024) and claims that it states that a district court may "grant a motion to dismiss based on an outside-the-complaint exhibit if a complaint refers to the exhibit [or] if the plaintiff's claim depends on it." (ECF No. 21, PageID.262 (alteration in Advisorworld's brief).) However, *Blackwell*, quoted accurately without alterations, states, "We allow a district court to grant a motion to dismiss based on an outside-the-complaint exhibit if a complaint refers to the exhibit *and* if the plaintiff's claim depends on it." *Blackwell*, 123 F.4th at 487 (emphasis added).

Advisorworld's quotation of *Blackwell* replaces the word "and" with "or," substantially changing the meaning of this sentence. The Court warns counsel that such modifications may violate Federal Rule of Civil Procedure 11(b)(2), which states that attorneys, by presenting papers to the Court, certify to the best of their knowledge, information, and belief that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." The fact that the alteration from "and" to "or" used square brackets indicates that the alteration was done knowingly. Advisorworld's counsel is warned not to engage in any further misrepresentations of the law or the facts in this case.

lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### B.   Analysis

> i.   *Failure to state a claim based on Advisorworld's outside-the-complaint documents*

Advisorworld first argues that the "same information [it] attaches in support of dismissal based on the doctrine of *forum non conveniens* equally demonstrates that Dobronski lacks a valid claim because he established a business relationship within the meaning of the TCPA implementing regulations." (ECF No. 21, PageID.268.) The Court interprets Advisorworld's reference to attachments as referring to the declaration of Galen Weston, the Chief Executive Officer of Advisorworld, (ECF No. 21-1), and screenshots and hyperlinks in its motion to dismiss. (ECF No. 21, PageID.253–258.)

The Court declines to consider Advisorworld's extrinsic material in reviewing its arguments under Rule 12(b)(6). Although evidence of this nature may potentially be considered in resolving a motion to enforce a forum-selection clause under the forum non conveniens doctrine, *see VCST*, 142 F.4th at 400, such evidence is not properly before the Court on a motion to dismiss for failure to state a claim. The screenshots,

hyperlinks, and declaration on which Advisorworld relies do not fall into any of the exceptions in which a court may consider extrinsic material on a motion brought under Rule 12(b)(6) as they are not referred to or quoted in the amended complaint, nor do they appear to be public records.[11]

Because the Court declines to consider this extrinsic evidence, it rejects Advisorworld's Rule 12(b)(6) challenge based on Plaintiff's alleged submission of inquiries to Advisorworld. Advisorworld's argument in this respect relies on the substance of the extrinsic evidence it has presented to the Court. (*See* ECF No. 21, PageID.268 ("Dobronski Asked Advisorworld.com for Information, Which Is A Complete Bar to His

---

[11] Advisorworld does not provide any explanation for why the screenshots, hyperlinks, or declaration can be considered public documents, nor does it demonstrate that these items are referenced in the complaint. And even if these documents could be considered in the course of resolving a motion to dismiss under Rule 12(b)(6), the documents were not properly presented to the Court. *See* Eastern District of Michigan Electronic Filing Policies and Procedures R19(a) ("An exhibit available in original electronic format must be converted to PDF, made text-searchable and filed electronically."). Further, at least some evidence appended to Mr. Weston's declaration and the screenshots set forth in Advisorworld's brief have not been properly authenticated. *See generally Foreword Mag.*, 2011 WL 5169384, at *3 (explaining requirements to authenticate print-outs of commercial websites); *Lyngaas v. Curaden AG*, 992 F.3d 412, 431 (6th Cir. 2021) (affirming exclusion of summary-report logs from evidence where the proponent failed to present anyone who could explain how they were created or vouch for their accuracy).

Claims").) Because that evidence cannot be considered, this aspect of its Rule 12(b)(6) motion fails.

### ii.    Unclean Hands

Advisorworld next argues that Plaintiff's "claim should be barred" because his conduct—"filling out inquiry forms under false names intending to entrap Advisorworld.com into TCPA violations"—falls within the "unclean hands doctrine." (ECF No. 21, PageID.271.)

To the extent Advisorworld claims that the unclean hands doctrine bars all of Plaintiff's claims for relief, the Court disagrees. The doctrine of unclean hands is an equitable defense. *Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, 912 F.3d 316, 344 (6th Cir. 2018) (stating that the "unclean hands doctrine allows a court to deny equitable relief" under certain circumstances); *Cyber Sols. Int'l, LLC v. Pro Mktg. Sales, Inc.*, 634 F. App'x 557, 567 (6th Cir. 2016) ("The doctrine of unclean hands is an equitable concept that allows a court to deny injunctive or declaratory relief . . . ."). Here, Plaintiff seeks monetary and injunctive relief. (ECF No. 20, PageID.238–239.) The Court clarifies that the doctrine of unclean hands would not bar Plaintiff's claims for monetary damages as that is not a claim for equitable relief.

Further, Advisorworld's unclean hands argument relies on extrinsic evidence of Plaintiff's purported conduct which, for the reasons stated above, is not properly before the Court at this time. Because such evidence may not be considered on a motion to dismiss, the Court is unable to conclude that Plaintiff "is guilty of conduct involving fraud, deceit, unconscionability, or bad faith related to the matter at issue to the detriment of the other party." *Innovation Ventures*, 912 F.3d at 344 (quoting *Cyber Sols. Int'l*, 634 F. App'x at 567).

Advisorworld's motion to dismiss under the unclean hands doctrine is denied.

### iii. *Plaintiff's claim under 47 C.F.R. § 64.1601(e)*

Finally, Advisorworld argues that Plaintiff's claim under 47 C.F.R. § 64.1601(e), set forth as Count IX, must be dismissed because it lacks a private right of action. (ECF No. 21, PageID.271.)

47 C.F.R. § 64.1601(e) sets forth that those engaging in telemarketing "must transmit caller identification information." Numerous district courts have found that § 64.1601(e) lacks a private right of action and, specifically, was not promulgated under a statute that conveyed a private right of action. *See, e.g.*, *Dobronski v. Selectquote Ins.*

29

*Servs.*, 462 F. Supp. 3d 784, 789 (E.D. Mich. 2020); *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 379 (E.D. Mich. 2025) (collecting cases).

Plaintiff cites opinions that have come to the contrary conclusion. These decisions reason that § 64.1601(e) was promulgated under 47 U.S.C. § 277(c) and, thus, a plaintiff who brings a claim under this regulation is entitled to the benefits of § 277(c)(5)(B), which creates a private right of action. (*See* ECF No. 23, PageID.396–397.) The Court has carefully reviewed these opinions and finds that the reasoning set forth in *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d at 377–80, is persuasive. The Court thus concludes that there is a private right of action to assert claims under 47 C.F.R. § 64.1601(e).

Advisorworld's motion to dismiss Count IX is denied.

## V.   Conclusion

For the reasons set forth above, Defendant Advisorworld's motion to dismiss (ECF No. 21) is DENIED.

IT IS SO ORDERED.

Dated: March 31, 2026          s/ Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                               United States District Judge

30

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 31, 2026.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager

31