**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Mark W. Dobronski,

Plaintiff,

v.

Joseph Earl Uppleger III and Advisorworld.com, Inc.,

Defendants.

______________________________/

Case No. 25-10168

Judith E. Levy
United States District Judge

Mag. Judge Elizabeth A. Stafford

**OPINION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR ANTISUIT INJUNCTION [34]**

In January 2025, Plaintiff Mark W. Dobronski filed a complaint alleging that Defendants Advisorworld.com, Inc. ("Advisorworld") and Joseph Earl Uppleger III violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*, and two Michigan statutes similar to the TCPA. (*See* ECF No. 1.) Plaintiff amended his complaint in August 2025. (*See* ECF No. 20.) About a month later, Advisorworld initiated its own lawsuit against Plaintiff in Ontario, Canada ("the Ontario action"), claiming negligent or intentional misrepresentation, breach of contract, and conspiracy arising from Plaintiff's alleged repeated submission of

false information to Advisorworld.com website inquiries. (*See generally* ECF No. 34-2.) Advisorworld alleges that some of these false submissions triggered the unwanted phone calls underlying Plaintiff's TCPA claims. (*Id.* at PageID.516–517, ¶¶ 11–24.)

Plaintiff now moves for an antisuit injunction to enjoin Advisorworld's Ontario action against him from proceeding. (ECF No. 34.) For the reasons set forth below, Plaintiff's motion is denied without prejudice.

## I. Background

Plaintiff alleges that on January 9, 2025, he received several unwanted phone calls from Advisorworld. (*See* ECF No. 20, PageID.226–229, ¶¶ 72–85.) He seeks to recover under the TCPA for the alleged violations stemming from those calls. (*Id.* at PageID.238.) Advisorworld previously moved to dismiss this case, asserting that the calls to Plaintiff were only initiated because he completed multiple online inquiry forms, each of which—according to Advisorworld—required Plaintiff's affirmative assent to the website's Terms of Use and Privacy Policy. (ECF No. 21, PageID.252.) From Advisorworld's perspective, that assent bound Plaintiff to a forum-selection clause mandating that courts in the

Province of Ontario, Canada, have exclusive jurisdiction over claims arising from the parties' interaction. (*Id.*) The Court denied the motion to dismiss because Advisorworld failed to sufficiently demonstrate that Plaintiff agreed to litigate this dispute in Canada. (ECF No. 30, PageID.463–64.)

However, shortly after Advisorworld filed its motion to dismiss but months before the Court's denial of that motion, Advisorworld sued Plaintiff in the Ontario Superior Court of Justice for alleged negligent or intentional misrepresentation, breach of contract, and conspiracy. (*See* ECF No. 34-2, PageID.513, ¶ 1.) In that suit, Advisorworld claims that on and after January 8, 2025, Plaintiff repeatedly accessed and submitted false information to website inquiries under various aliases, such as "George Curious" and "Stanley Norris." (*Id.* at PageID.514–515, ¶¶ 5, 10.) These submissions, in turn, triggered verification calls by Advisorworld's system to the phone numbers Plaintiff provided in the inquiries. (*Id.* at PageID.516, ¶ 11.) Advisorworld alleges that Plaintiff's false submissions were designed to entrap the company into violating American telecommunications laws for Plaintiff's financial gain. (*Id.* at PageID.516–517, ¶¶ 17, 24.) Advisorworld also claims that the

illegitimate leads caused the company to lose several clients, incur legal expenses from defending this suit, and suffer damage to its reputation in the market. (*Id.* at PageID.517, ¶¶ 20–23.)

Advisorworld seeks monetary and injunctive relief in its Ontario action. Notably, it requests an "interlocutory and permanent injunction restraining [Plaintiff] from . . . initiating or threatening legal proceedings relating to alleged breach of privacy rights or telecommunications violations without leave of the [Canadian] Court." (*Id.* at PageID.513, ¶ 1(c).) The complaint also later states that Plaintiff "should be enjoined from seeking any further litigation against Advisorworld or any comparable website, without leave of the Courts of Ontario." (*Id.* at PageID.518, ¶ 31.)

Plaintiff moved to dismiss the Ontario action on March 6, 2026, and Advisorworld has since responded to that motion.[1] (*See* ECF Nos. 41-2, 41-3.) According to public records, the Ontario action remains open.[2]

---

[1] Advisorworld refers to an affidavit of Galen Weston as its response to Plaintiff's motion to dismiss in the Ontario action. (*See* ECF No. 41-3.)

[2] This information was obtained by entering the Ontario action's case number, CV-25-00751124-0000, at https://courts.ontario.ca/portal/search.

Before the Court is Plaintiff's motion for an antisuit injunction barring prosecution of Advisorworld's Ontario action. (ECF No. 34.) The motion is fully briefed. (ECF Nos. 41, 42.) For the reasons set forth below, Plaintiff's motion is denied without prejudice.

## II. Legal Standard

"Principles of international comity require that foreign antisuit injunctions should be issued only in the most compelling circumstances." *Gau Shan Co. v. Bankers Tr. Co.*, 956 F.2d 1349, 1357 (6th Cir. 1992). The Sixth Circuit considers only two factors in determining whether to enjoin a party from proceeding in its foreign action: "1) whether this court's jurisdiction is threatened by the [foreign] action, and 2) whether this court's important public policies are being evaded by the [foreign] action." *Id.* at 1355.

"[T]hreats to a court's jurisdiction, however, are quite unusual." *Id.* at 1356. Only two scenarios may pose such a threat: "(1) when the district court's jurisdictional basis is *in rem* or *quasi in rem*; or (2) when the foreign court attempts to carve out exclusive jurisdiction to divest the district court of all jurisdiction." *Beijing Fito Med. Co., Ltd. v. Wright Med. Tech., Inc.*, 763 F. App'x 388, 399 (6th Cir. 2019).

Furthermore, "only the evasion of the most compelling public policies of the forum will support the issuance of an antisuit injunction." *Gau Shan*, 956 F.2d at 1358. There is little case law on the importance of public policy considerations in the foreign antisuit injunction context, however, "guidance is offered by cases that analyze public policy concerns . . . in the decision whether to enforce a foreign judgment." *Id.* at 1357–58. In that context, "courts rarely resort to public policy as a basis for refusing to enforce a foreign judgment." *Id.* at 1358. In addition, neither "duplication of parties and issues" nor "[f]actors such as vexatiousness or oppressiveness" will justify the issuance of an antisuit injunction. *Id.* at 1355 (internal quotation marks omitted).[3]

The Sixth Circuit has had limited occasion to address requests for foreign antisuit injunctions. *See, e.g.*, *Gau Shan*, 956 F.2d 1349; *Beijing Fito*, 763 F. App'x 388. In *Gau Shan*, the plaintiff, a Hong Kong corporation, sought rescission of a promissory note it was allegedly

[3] Plaintiff cites to *Gau Shan* for the quotation that "mere inconvenience, duplication of effort, or even risk of inconsistent judgments" may not justify a foreign antisuit injunction. (ECF No. 34, PageID.498.) This quotation does not appear anywhere in the *Gau Shan* opinion. Plaintiff's counsel is warned to check all citations to the facts and the law. Failure to do so results in a waste of judicial resources and may give rise to sanctions.

induced to sign by the defendant American corporation's fraud. *See* 956 F.2d at 1352. A federal court in the Western District of Tennessee preliminarily enjoined the defendant from initiating any legal action concerning the note in Hong Kong, finding that the plaintiff would be irreparably harmed if the defendant sued the plaintiff in Hong Kong or if the defendant exercised its receivership rights under Hong Kong law. *Id.* On appeal, the Sixth Circuit determined that the lower court erred by misinterpreting "the relevant principles of international comity." *Id.* at 1351. In particular, the Sixth Circuit found no threat to the court's jurisdiction because the defendant represented it would not seek injunctive relief that would "carve out exclusive jurisdiction over the [American] action" nor would it exercise any of its receivership rights if allowed to proceed with a suit in Hong Kong. *Id.* at 1356–57. Furthermore, the availability of treble damages under Tennessee law did not constitute a compelling public policy that outweighed principles of international comity. *Id.* at 1358.

In *Beijing Fito*, the plaintiff, a Chinese company, sued an American corporation in the Western District of Tennessee for alleged breach of contract and tortious interference with business relationships. 763 F.

App'x at 390. While the Tennessee action was pending, the plaintiff also initiated a parallel lawsuit alleging "substantially similar" claims against the defendant in a Chinese court. *Id.* at 391. Though that foreign action did not seek to carve out exclusive jurisdiction over the case, the Sixth Circuit affirmed the lower court's issuance of an antisuit injunction enjoining the foreign lawsuit because it evaded a forum selection clause in the parties' contract, which had bound them to litigate any contract disputes in the Western District of Tennessee. *Id.* at 399–400. The Sixth Circuit, in line with other circuits, determined that the enforcement of forum selection clauses constituted an "important national policy interest," the evasion of which warranted a foreign antisuit injunction. *Id.* at 400.

## III. Analysis

As set forth above, only a threat to this court's jurisdiction or the evasion of a most compelling public policy could justify enjoining Advisorworld's Ontario action. At this time, Plaintiff does not sufficiently establish either of these circumstances.

### A. Threat to Jurisdiction

Plaintiff argues that a threat to this Court's jurisdiction exists because Advisorworld previously failed to demonstrate that he agreed to exclusively litigate in Ontario, and allowing the Ontario action to proceed would thus burden or restrain his prosecution of this case. (ECF No. 34, PageID.504.) Not so. The Ontario action does not seek to "carve out exclusive jurisdiction" over this *in personam* proceeding. *Gau Shan*, 956 F.2d at 1356. Rather, it separately seeks to redress alleged harm caused to Advisorworld's business from Plaintiff's purported submission of false statements to the company, which allegedly occurred during and in the weeks following the events that gave rise to this lawsuit. (ECF No. 34-2, PageID.517, ¶¶ 20, 21, 28; ECF No. 41, PageID.606.) As such, principles of international comity counsel that these two actions may proceed in parallel. *See Gau Shan*, 956 F.2d at 1357 ("Principles of international comity require that foreign antisuit injunctions should be issued only in the most compelling circumstances and that absent such circumstances parallel proceedings should be permitted.").

That said, the Ontario action's unusually broad request for injunctive relief—if wholly adopted—could paralyze this litigation by

restricting Plaintiff's ability to prosecute his claims. In its complaint, Advisorworld states that Plaintiff should be enjoined from "initiating or threatening legal proceedings relating to . . . telecommunications violations" and "from seeking any further litigation against Advisorworld . . . without leave of the Courts of Ontario." (ECF No. 34-2, PageID.513, ¶ 1; *id.* at PageID.518, ¶ 31.)

Even so, Advisorworld represents that the relief sought in the Ontario action solely concerns prospective claims and "does not ask the Canadian court to dismiss, terminate, or otherwise interfere with the prosecution of any lawsuit *currently pending*." (ECF No. 41, PageID.617.) The Sixth Circuit relied on similar assurances to find no threat to the court's jurisdiction in *Gau Shan*, where the defendant explicitly declared that the relief it requested in the case abroad would leave the court's jurisdiction in the existing American case untouched. *See* 956 F.2d at 1356.

Because Advisorworld similarly represents that its Ontario action will not interfere with this case, the Court finds no threat to its jurisdiction.

**B. Evasion of Important Public Policies**

Next, Plaintiff asserts that Advisorworld's Ontario action seeks to evade the important public policy of the TCPA. (*See* ECF No. 34, PageID.502; ECF No. 42, PageID.1070.) The TCPA certainly embodies an important national policy designed to protect consumer privacy against intrusive and unwanted telemarketing practices. *See Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 824 (M.D. Tenn. 2018) ("The TCPA is a remedial statute meant to protect consumers from certain telephone calls thought to be an invasion of consumer privacy and even a risk to public safety.") (internal quotation marks omitted); *cf. Gau Shan*, 956 F.2d at 1358 (observing that an important national policy would be given more weight than the public policy of one state when balanced against principles of international comity).

But the Ontario action does not presently appear to evade the TCPA's important national policy. Again, Advisorworld has represented that the Ontario action's requested relief would not "interfere with the prosecution of any lawsuit *currently pending*" and concerns only "future, prospective" legal action by Plaintiff. (ECF No. 41, PageID.617–618.) Accordingly, Plaintiff's TCPA rights in this case remain intact and are

not impaired by the Ontario action. This circumstance is distinguishable from *Beijing Fito*, where the plaintiff's mere act of filing a foreign suit directly evaded a forum selection clause that bound the parties. 763 F. App'x at 399–400.

Furthermore, Advisorworld's requested injunctive relief concerning Plaintiff's future ability to bring TCPA claims is unusually broad, such that it borders on frivolousness. If granted in full, it would prohibit Plaintiff from threatening or bringing *any* legal action against any individual or entity related to an alleged breach of privacy rights or telecommunications violation without the Ontario court's approval.[4] (*See* ECF No. 34-2, PageID.513, ¶ 1.) Relief so extraordinary may rise to the level of being "repugnant to fundamental notions of what is decent and just," thereby requiring nonenforcement under American policy. *Gau Shan*, 956 F.2d at 1358.

Given the unreasonable breadth of the requested injunctive relief, it is unlikely that any court would wholly grant such a request, and foreign antisuit injunctions "will not be awarded in doubtful cases."

---

[4] Neither party addresses the extent to which the requested relief in the Ontario action, if granted, would be enforceable in the United States.

*Fisher & Co., Inc. v. Fine Blanking & Tool Co., L.T.D.*, No. 19-10665, 2019 WL 5853539, at *3 (E.D. Mich. Nov. 8, 2019) (declining to issue a foreign antisuit injunction given the extraordinary nature of the relief and the court's uncertainty as to the applicability of a forum selection clause). Should circumstances change such that the risk of evading the TCPA's important national policy becomes more concrete, Plaintiff may file another motion requesting a foreign antisuit injunction.

Finally, Plaintiff argues that allowing the Ontario action to proceed undermines the TCPA's public policy by chilling or deterring future TCPA litigants from bringing actions against foreign companies because they may be hauled into a foreign court to defend a retaliatory suit. (ECF No. 34, PageID.502.) This argument is unpersuasive. Plaintiff does not refer to any precedent in which speculation concerning a chilling effect on litigants was found to constitute an evasion of important public policy. Rather, *Gau Shan* is explicit that "[f]actors such as vexatiousness or oppressiveness . . . are likely to be present whenever parallel actions are proceeding concurrently," and issuing an antisuit injunction based on those factors would not accord with the Sixth Circuit's criteria for accommodating important principles of international comity. 956 F.2d at

1355. Moreover, Advisorworld, a Canadian company, seeks recourse in its home country for an alleged pattern of false submissions by Plaintiff to its website inquiries, which resulted in purported harm to its business. Nothing suggests similar circumstances would exist for citizens seeking to vindicate their TCPA rights in the future.

As such, the Court does not find evasion of a most compelling public policy at this juncture.

## IV. Conclusion

For the reasons set forth above, Plaintiff's motion for an antisuit injunction (ECF No. 34) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: November 24, 2026
Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 24, 2026.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager